IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANNE N.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO, Commissioner of<br>Social Security,<br><br>　　　　Defendant. | CIV. NO. 25-00293 JMS-KJM<br><br>ORDER REVERSING THE ALJ'S<br>DECISION AND REMANDING<br>FOR FURTHER PROCEEDINGS |

**ORDER REVERSING THE ALJ'S DECISION AND REMANDING FOR
FURTHER PROCEEDINGS**

**I.  INTRODUCTION**

Anne N. ("Claimant" or "Plaintiff") seeks judicial review under

42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security,

Frank Bisignano ("Commissioner").[1]  ECF No. 1 (Complaint for Review).  The

Commissioner adopted the Administrative Law Judge's ("ALJ") October 3, 2024

written decision finding Claimant not disabled under § 216(i) and § 223(d) of the

---

[1]  Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P.
5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on
Court Administration and Case Management of the Judicial Conference of the United States
(May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf
[https://perma.cc/YLJ9-LBRF].

Social Security Act ("Decision").  Claimant argues that the ALJ committed legal error by (1) failing to provide specific, clear, and convincing reasons for discrediting her symptom testimony, and (2) failing to properly evaluate medical opinions.  ECF No. 21 at PageID.1805.

The court finds that the ALJ erred by improperly addressing Claimant's symptom testimony when assessing her residual functional capacity which was, consequently, not based on substantial evidence.  Accordingly, the court REVERSES the Commissioner's final decision and REMANDS for further proceedings.

## II.  <u>BACKGROUND</u>

**A.     The Social Security Disability Determination Framework and the ALJ's Findings and Decision**

On February 9, 2022, then-45-year-old Claimant applied for Social Security Disability Insurance benefits, alleging June 12, 2018, as the disability onset date.  Administrative Record ("AR")[2] 176, 179.  Her claim for Title II Social Security Disability Benefits was denied on November 30, 2022, and the denial was affirmed on reconsideration on August 7, 2023.  AR 102–106, 113–116.  At the July 11, 2024 administrative hearing, Claimant amended her alleged disability

---

[2]  The Administrative Record ("AR") is numbered sequentially, located in the lower-right corner of each page of the AR, from pages 1 to 1763 and is available at ECF No. 9-1.

onset date to August 1, 2020.[3]  AR 41.  Thus, the relevant period for purposes of this appeal is August 1, 2020, to March 31, 2024, the date Claimant was last insured.  AR 17.

The Social Security Administration has established a five-step sequential analysis to assess disability,[4] which asks:

(1)    Has claimant been engaged in substantial gainful activity?  If so, she is not disabled.  If not, proceed to step two.

(2)    Has claimant's alleged impairment been sufficiently severe to limit her ability to work?  If not, she is not disabled. If so, proceed to step three.

(3)    Does claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, she is disabled.  If not, proceed to step four.

(4)    Does claimant possess the residual functional capacity ("RFC")[5] to perform her past relevant work?  If so, she is not disabled.  If not, proceed to step five.

---

[3]  Claimant's counsel explained at the administrative hearing that the amended alleged onset date coincided with Claimant's lumbar discectomy.  AR 41.

[4]  A claimant is "disabled" for purposes of the Social Security Act if (a) she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders her incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[5]  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity [('RFC')]." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)).  A claimant's RFC is "the most [Claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

> (5)    Does claimant's RFC, when considered with her age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, she is not disabled.  If not, she is disabled.

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9thir. 2006) (citing 20 C.F.R. § 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled)); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations did not alter the familiar "five-step sequential evaluation process").  For steps 1 through 4, the burden of proof is on the claimant, and if the claimant reaches step 5, the burden shifts to the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step 1, the ALJ found that Claimant had not engaged in substantial gainful activity since August 1, 2020.  AR 19 (citing 20 C.F.R. § 404.1571 et seq.).

At step 2, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status post-lumbar discectomy in August 2020; degenerative joint disease of the right shoulder with thoracic outlet syndrome, right shoulder and right side ulnar nerve impingement and tendonitis; anxiety and depression; and obesity . . . ."  AR 20 (citing 20 C.F.R. § 404.1520(c)).  The ALJ also found Claimant's impairments due to obesity were severe.  *Id.* (citing Social Security Ruling 19-2p).

4

At step 3, the ALJ found that through March 31, 2024, Claimant did not have an impairment or combination of impairments that met or was medically equal to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1").  AR 20 (citing 20 C.F.R §§ 404.1520(d), 404.1525, and 404.1526).  For physical impairments, the ALJ evaluated listings in Appendix 1 sections 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and 1.18 (abnormality of a major joint in any extremity) and found that the severity of these impairments did not meet or medically equal the criteria of those listings.  *Id.*  For mental impairments, the ALJ evaluated listings in sections 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) and likewise found that the severity of these impairments did not meet or medically equal the criteria of those listings.  AR 20–22.

Between steps 3 and 4, the ALJ assessed Claimant's RFC.  The ALJ found that during the relevant period, Claimant had the RFC to perform sedentary work:

> [Claimant] can lift a maximum of 10 pounds occasionally, lift and carry 5 pounds frequently; stand and walk 2 hours out of 8 hours; can perform occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; precluded from working around hazardous moving machinery, unprotected heights; no ladders, ropes or scaffolds; can understand, remember and carry out simple and detailed work routines; and can do work that is not performed at production pace such as assembly line work.

5

AR 22 (citing 20 C.F.R. § 404.1567(a)).[6]

At step 4, the ALJ determined that Claimant has no past relevant work.  AR 28.  Specifically, the ALJ acknowledged that Claimant had not "return[ed] to her career as a dental hygienist after 2018, except to do a 'side job' scanning papers into a computer 1–2 hours a day," but found that "this work [scanning papers was] below the earnings threshold for substantial gainful activity."  AR 19 (citing 20 C.F.R. § 404.1574(b)).

At step 5, the ALJ found that through March 31, 2024, given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. AR 28–29 (citing 20 C.F.R. §§ 404.1569, 404.1569a).  At the administrative hearing, the vocational expert testified that, given Claimant's limitations, she would have been able to perform the requirements of occupations such as

---

[6]  The regulations define "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

telephone quotation clerk, charge account clerk, and parimutuel ticket checker.[7]

AR 29.  Based on the VE's testimony, the ALJ found Claimant not disabled.

AR 30.

## B.    Procedural Background

On October 3, 2024, the ALJ issued her Decision finding Claimant

not disabled from August 1, 2020, through March 31, 2024.  AR 17–31.  This

denial became final when the Appeals Council denied Claimant's request for

review on May 27, 2025.  AR 1–6.  Claimant brought this action for judicial

review on July 15, 2025.  ECF No. 1.

Claimant filed her Opening Brief on January 20, 2026.  ECF No. 21.

The Commissioner filed an Answering Brief on February 10, 2026.  ECF No. 23.

Claimant filed her Reply Brief on March 4, 2026.  ECF No. 24 (mislabeled as

"Opening Brief").  The court heard oral argument on May 18, 2026.

## III.  STANDARDS OF REVIEW

## A.    General Standard

Congress has provided a limited scope for judicial review of the

Commissioner's decision to deny benefits under the Social Security Act.  *See* 42

U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

---

[7] A parimutuel ticket checker is one who "[c]ounts and records number of . . . tickets cashed at race track to verify records of cashiers.  Compares totals with entries on daily balance sheet.  Compares each ticket with sample or examines tickets under fluorescent light to verify validity of tickets.  Reports discrepancies."  Dictionary of Occupational Titles (219.587-010), https://www.occupationalinfo.org/21/219587010.html [https://perma.cc/66AC-YCF8].

1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). First, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id*. (quoting *Treichler*, 775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id*. (quoting *Treichler*, 775 F.3d at 1098). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation and citation omitted).

To determine whether there is substantial evidence, courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations and quotation marks

omitted).  If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed.  *Id*. at 1010 (citations omitted).  "Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards."  *Gutierrez*, 740 F.3d at 523.

And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if it is "inconsequential to the ultimate nondisability determination" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1099).

**B.    Standard for Symptom Testimony**

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Garrison*, 759 F.3d at 1014 (internal quotation marks omitted)).  "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged

9

symptoms." *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Garrison*, 759 F.3d at 1014–15); *see also Lingenfelter*, 504 F.3d at 1035–38 (noting that to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony). "[A]n ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Smartt*, 53 F.4th at 494–95 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). The heightened standard does not apply when there is affirmative evidence of malingering. *Id.* at 497. In other words, absent affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting the clear-and-convincing-reasons standard does not apply upon affirmative evidence that the claimant is malingering).

10

As to credibility, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.") (citation omitted); *cf. Johns v. Berryhill,* 2019 WL 1453482, at *1 (D. Haw. Apr. 2, 2019) (reversing and remanding Commissioner's decision because ALJ failed to properly "specifically identify" and discuss plaintiff's pain and symptom testimony in rejecting her testimony and finding her not disabled); *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (noting that to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief.") (citation and internal quotation marks omitted).  In addition,

> it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017 (citations omitted).

11

**C.      Standard for Daily Activities**

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* at 1016 (citing cases). Furthermore, recognizing that "'disability claimants should not be penalized for attempting to lead' their 'lives in the face of their limitations,'" the Ninth Circuit has "provided guidelines for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony." *Auapaau v. O'Malley*, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024) (quoting *Reddick*, 157 F.3d at 722). Accordingly, "daily activities may be found to bear on the credibility of a claimant's testimony only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day engaged in pursuits that are transferable to a work setting." *Id.* (citing *Orn*, 495 F.3d at 639).

## IV.  <u>DISCUSSION</u>

Claimant asserts that the ALJ (1) failed to sufficiently consider her symptom testimony of chronic back and neck pain, obesity, and anxiety and depression, and (2) when assessing her RFC, failed to properly evaluate her activities of daily living and provide specific, clear, and convincing reasons why

those activities contradict her subjective complaints.  Because it is dispositive as the basis for remand, the court addresses only the ALJ's adverse credibility finding as to Claimant's testimony about the intensity, persistence, and limiting effects of her back and neck pain.

## A.    The ALJ Improperly Failed to Credit Claimant's Symptom Testimony

At the first step of *Smith*'s two-step credibility framework, the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to result in symptoms."  AR 23.

At the second step, however, the ALJ rejected Claimant's testimony regarding the intensity, persistence, and limiting effects of chronic back and neck pain as "not entirely consistent with the medical evidence and other evidence in the record," *id*., resulting in assessing an RFC that does not include the need to miss days of work or for extra work breaks, *see* AR 22; *see also* ECF No. 21 at PageID.1807.  The RFC purportedly accounted for Claimant's physical (and mental) conditions[8] but appeared to unduly emphasize Claimant's improvements: the right L4–5 microdiscectomy Claimant underwent on August 12, 2020, "with significant benefit" and "uncomplicated healing"; Claimant noting in November 2020 that "70% of her pain was gone" with "no leg or radicular symptoms, only

---

[8]  Claimant's mental conditions included "normal speech, linear and goal-directed thought process, intact associations, good/fair insight/judgment, orientation in four spheres, good/fair attention/concentration, intact memory, . . . good fund of knowledge"; and "improvement with medications."  AR 23.

L5–S1 axial pain"; and "no abnormal findings in the lower back and lower extremities" with a "normal and stable" gait in spite of complaints of "right-sided neck pain radiating to the right upper extremity." AR 23–24. Likewise, the assessed RFC was based on evidence that purportedly showed Claimant's "independent good functioning for a wide variety of activities inconsistent with erosion of the entire world of work." *Id*. at 24.

### 1. *Claimant's Testimony*

At the July 11, 2024 administrative hearing, Claimant testified as to the main issue precluding her ability to work: "[m]uscle spasms in [her] back that occur regularly. . . . The muscle spasms occur in [her] neck and lower right back. And it doesn't take much to set them off." AR 53. As to the cause of her back condition, Claimant testified that while working as a dental hygienist, she suffered a repetitive stress injury that culminated in a torn rhomboid muscle, which rendered her unable to work. AR 44. Claimant also testified that later, in May or June of 2020, while reaching into the oven, she suddenly "felt something snap in [her] back." AR 53–54. This incident left her unable to walk and "bedridden for three months." AR 54. Claimant's husband had to bathe, dress, and bring her to the bathroom and the only way she could ambulate was by a walker. *Id.* Even after the August 2020 discectomy, Claimant "still had pain" and her sciatica "did not settle down." *Id*. But she was able to walk, and while the pain still produced muscle spasms, "the pain down [her] right leg had subsided." *Id*.

14

Claimant testified that she must constantly change positions from sitting to lying to standing every 15 minutes or so, which was a condition that had not changed from the prior year.  AR 57.  She testified that after sitting for 15 to 20 minutes, her lower-right back, neck, and shoulder would "start to seize up," forcing her to lie on her side for 20 to 30 minutes before she could sit again.  AR 58.  Standing in one place does not relieve her pain so she has a mobile orthopedic chair; most of the time, however, she is lying on her side on the couch.  AR 58–59.  Claimant can walk for about 15 minutes until she starts to "cramp and limp" and her "low back starts to seize up and spasm," after which she must lie on her side to relieve the discomfort.  *Id*.

Claimant testified that cleaning the bathroom or "do[ing] something around the house" would often cause her to be "laid up for one day to two weeks," because the "spasm becomes so severe" that she "can't stand up straight."  AR 60.  She also testified that she can only "tolerate" certain positions in bed, and that she can "maybe" lift and carry eight pounds without aggravating any of her discomfort.  *Id*.  As to sitting at a desk and using her hands for activities such as typing, Claimant testified that it would "[a]bsolutely" cause discomfort or pain that "radiates up [her] right arm and into [the] . . . right side of [her] neck."  *Id*.  Consequently, sitting at a computer "is actually really difficult" so Claimant limits her time and is "barely on the computer."  *Id*.

15

Since the discectomy, Claimant underwent four steroid injections to treat neck pain but "[t]hey were ineffective" and she has not had any such injections in her low back.  AR 61.  Muscle relaxers merely help "take the edge off."  *Id.*

Claimant also testified about traveling from Oahu to Chicago to attend a niece's wedding, despite it being "very traumatic" and "very painful" for her to fly.  AR 61.  She managed it with "a wheelchair and medication," as well as getting up and "walk[ing] the aisle" during the flight.  *Id.*  She described the flight as "horrendous" but said "suffering through travel was worth . . . being able to spend time" with her family.  *Id.*  She broke up the return trip over two days but was still left bedridden for 14 days.  AR 61–62 (citing 6/26/2020 patient consultation at AR 799–800).

Claimant also testified to having almost daily headaches—ranging from dull headaches to migraines severe enough "to have to take medication, and no lights on, no sound, dark room, laying down until it passes" or needing to spend "[a] couple of hours at least in the darkness . . . depend[ing] on the severity."  AR 63–64.[9]

Further, Claimant testified about the "good days and bad days" of her "flares."  AR 62.  On a "bad day," Claimant's husband must "do everything" for

---

[9]  The ALJ did not address Claimant's headaches in her Decision.

her, as he had done in May/June of 2020: bathing; dressing; trips to the bathroom.
*Id*. These "flare-ups that are that significant happen at least one to three times a
month, and it can last anywhere from one day to two weeks." *Id*. Fortunately,
Claimant's husband's "work has been extremely supportive" of her situation. AR
63.

The ALJ did not find or cite any affirmative evidence of malingering;
thus, the ALJ was required to provide specific, clear and convincing reasons for
rejecting Claimant's testimony. *See Carmickle*, 533 F.3d at 1160 (reiterating that
"where the record includes objective medical evidence establishing that the
claimant suffers from an impairment that could reasonably produce the symptoms
of which [she] complains, an adverse credibility finding must be based on 'clear
and convincing reasons'" unless "there is affirmative evidence that the claimant is
malingering") (citations omitted); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137
(9th Cir. 2014) (stating that an ALJ discrediting a claimant's testimony must
provide "specific, clear, and convincing reasons"). The ALJ failed to do so.

### 2.    *ALJ Discredits Claimant's Testimony*

The Ninth Circuit has held that

> an ALJ does not provide specific, clear, and convincing
> reasons for rejecting a claimant's testimony by simply
> reciting the medical evidence in support of . . . her [RFC]
> determination. To ensure that our review of the ALJ's
> credibility determination is meaningful, and that the
> claimant's testimony is not rejected arbitrarily, we
> require the ALJ to specify which testimony she finds not

> credible, and then provide clear and convincing reasons,
> supported by evidence in the record, to support that
> credibility determination.

*Brown-Hunter*, 806 F.3d at 489.  Accordingly, "'[g]eneral findings'" are not enough to satisfy the clear and convincing standard.  *Id*. at 493.  "'[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Id*.  Failure to do so constitutes legal error.  *Id*. at 494.

The Commissioner asserts that the ALJ "reasonably discounted Plaintiff's self-reports because they conflicted with her activities and other evidence in the record."  ECF No. 23 at PageID.1832.  The Commissioner also argued that the "ALJ's reasoning was sufficiently clear and substantial evidence supports it."  *Id*.  The court disagrees.[10]

Here, the ALJ concluded that the objective medical evidence and Claimant's treatment history are "not entirely consistent with the degree of limitation alleged."  AR 24.  The ALJ stated:  "Although the claimant underwent invasive surgical treatment for severe spinal impairment, the record also documents typical and uncomplicated healing, resulting in documented reduction

---

[10]  The Commissioner relies upon an outdated standard—"sufficiently specific" findings, rather than specific, clear, and convincing reasons.  *See* Answering Brief, ECF No. 23 at PageID.1835 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).  But "cases following *Bunnell* read it as *supplementing* the 'clear and convincing' standard with the requirement that the reasons *also* must be 'specific,'" and "more recent cases have combined the two standards into the now-familiar phrase that an ALJ must provide specific, clear, and convincing reasons."  *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (citations omitted).

18

of symptoms. *The treatment record indicates that the claimant reported improvement in pain and other symptoms with physical therapy, injections, and other treatment modalities . . . .*" AR 24 (emphasis added). This summary, however, lacks specific, clear, and convincing reasons to discredit Claimant's alleged limitations. "[T]he ALJ 'did not specifically identify any . . . inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Brown-Hunter*, 806 F.3d at 494. And the ALJ did not summarize the treatment record but instead, without explanation or analysis, selectively cited examples in the record. *See* AR 24 (citing without discussing "6F/5, 12, 33, 40, 47; 8F/14, 15; 13F/4; 24F/71, 85, 93").

A review of these citations does indicate some improvement:

- "70% of overall pain issue is gone," AR 561 (November 4, 2020)

- "Physical Therapy along with massage [therapy] is ongoing and helpful" and "she feels better after her injection last visit," AR 526 (May 12, 2021)

- "Physical Therapy has been really helping and making difference in her quality of life," AR 1487 (August 8, 2022)

- "[H]er low back been feeling better since last session" and "first time could tolerate more activity today," AR 1501–1502 (September 15, 2022)

- "Patient reports her shoulder was feeling so much better," AR 1509 (November 18, 2022).

19

But not only did the ALJ fail to specifically identify and discuss these markers of improvement in discrediting Claimant's testimony, the ALJ also failed to account for complaints of continued pain and limitations that were reported by Claimant and noted by the healthcare provider during those same visits:

- "She reports that she is only slightly improved since surgery.  She is unable to sit or stand too long" and "**exercise intolerance (due to leg pain**)," AR 561 (November 4, 2020)

- "[S]till pain of the right > lest [sic] base of her neck with some associated pressure like headaches," AR 526 (May 12, 2021)

- "[N]oticed low back has been so sore . . . about 5/10 and she had hard time driving.  Patient noticed her shoulder pain was so sore for weeks she would keep waking up every night for few weeks and it feels better since last visit," AR 1509 (November 18, 2022).

"[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.  Without discussing or contextualizing  the evidence of improvement, the ALJ simply concluded that Claimant is capable of working.  And, as discussed in the following section, for years after the discectomy, Claimant continued to report experiencing pain.

## B.    The ALJ Mischaracterized Claimant's Daily Activities

The Commissioner contends that the ALJ "discounted Plaintiff's claims because her activities contradicted her allegations of disabling impairments."  ECF No. 23 at PageID.1834.  Like the ALJ's conclusory recap of

the objective medical evidence showing overall "improvement," the ALJ

summarily concluded that

> [a]lthough the claimant reported a limited ability to stand, walk, or sit, she retained independent good functioning for a wide variety of activities inconsistent with erosion of the entire world of work.  These included reported driving, carrying groceries, going on hikes, standing most of the week for her stepdaughter's performance, carrying a chair, getting on her knees to scrub and clean the floors, babysitting her stepchildren, traveling to the mainland for several weeks, cleaning the house, throwing an axe for fun, using a treadmill for 45–50 minutes, running errands, and maintaining her home.  While these activities are not determinative of the ultimate issue, they suggest fewer limitations than alleged.  Such capabilities fall squarely within the range of sedentary exertion, and a limitation to sedentary work accounts for the claimant's reported range of daily activities and lifting limitations.

AR 24 (citations to documents in AR omitted).  But the ALJ failed to analyze how

Claimant's daily activities "involv[e] the performance of physical functions that

are transferable to a work setting" or that she spent a "substantial part" of her day

engaging in such pursuits.  *Orn*, 495 F.3d at 639.  And the Social Security Act does

not require claimants to be "utterly incapacitated to be eligible for benefits, and

many home activities may not be easily transferable to a work environment where

it might be impossible to rest periodically or take medication."  *Smolen v. Chater*,

80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (citing *Fair v. Bowen*, 885 F.2d 597, 603

(9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)); *see also*

*Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (recognizing that "a

21

claimant need not vegetate in a dark room in order to be eligible for benefits")

(internal quotations and citation omitted), *superseded on other grounds by* 20

C.F.R. § 404.1502(a).

Moreover, Claimant's activities do not contradict her statements about

her symptoms.  Although "it is reasonable for an ALJ to consider a claimant's

activities which undermine claims of totally disabling pain in evaluating symptom

claims," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), Claimant's

physical therapy treatment notes demonstrate that practically every activity the

ALJ noted had negative consequences, which the ALJ failed to address.  The

following examples show, up to four years post-discectomy, Claimant's activity

(noted by the ALJ), its negative consequences (unaddressed by the ALJ), and the

medical provider's assessment:

- Driving, carrying shopping bags—"in so much pain"; low back 6/10; right anterior hip tightness; referral pain from right quadratus lumborum ("QL") tightness,[11] AR 1483–84 (July 28, 2022);

- Sitting on floor playing with stepdaughter and carrying groceries— 7/10 back pain; ilio-sacral joint dysfunction with thoracic spine, better mobility today, AR 1485–86 (August 5, 2022);

- Three-week trip to the mainland, carrying groceries, cleaning the house—neck and low back 7/10; cannot sit or stand for more than 30 minutes; "Patient is having daily chronic pain and . . . great

---

[11] Changing positions is recommended for quadratus lumborum pain.  *See* Quadratus Lumborum Syndrome, https://www.physio-pedia.com/Quadratus_Lumborum_Syndrome [https://perma.cc/B8XT-XHFL] ("Constantly standing in the same position will reduce blood flow and thus pave the way for pain.").

joint stiffness in multiple joints and limitations that cause issues with doing simple daily things," AR 1493–95 (September 8, 2022);

- Carrying pumpkins into the house and throwing axe for fun—could not turn neck at all for a few days, pain 6/10, low back 5/10, unable to stand up straight the next day; has not attended physical therapy for more than one month, AR 1503 (November 2, 2022);

- Forty-five minutes on incline treadmill—"flare up last night," pain in low back 5–6/10, neck 4/10; focus on spinal stability exercises, AR 1531–32 (April 4, 2023);

- Fifty minutes on treadmill, babysat stepdaughter—"could barely walk straight and was leaning forward and had to use orthopedic chair just to watch TV," pain 7/10; joint popping with right upslip correction, AR 1533–34 (April 14, 2023);

- Short hike—needed to take breaks, sore, deep pain through right buttock; "getting fatigued really fast" and "really deconditioned," AR 1456–57 (January 16, 2024);

- Hike and walk—"back is feeling it," took muscle relaxers for two nights, 3/10 shoulder pain; left overpronated foot causing medial knee pain, AR 1463–64 (January 23, 2024);

- "[S]tanding most of the week for her stepdaughter [sic] performance," trip to Costco to purchase orthopedic chair and had to carry it, on her knees cleaning the bathroom—on muscle relaxers for five days, back pain 7/10; right QL spasm, which eased up after the session, AR 1465–66 (February 8, 2024);

- Babysat stepdaughter, scanned papers while sitting in a chair and bending forward—"flared up her back," on muscle relaxers for a few days, right "shoulder upper back are out"; right QL spasm and upslip,[12] AR 1467–68 (February 27, 2024).

---

[12] According to one source, an upslip results from an abnormal "jamming" of the pelvis where one side of the pelvis is elevated in relation to the sacrum (bone at the base of the spine). *See* Upslips, https://andersonintegrativemedicine.com/upslips/ [https://perma.cc/GBV8-T6PH].

Claimant's allegations of good days and bad days is not inconsistent with her ability to engage in certain activities that result in periods of incapacity. The ALJ was required to explain how this undermines Claimant's credibility with specific, clear, and convincing reasons. The ALJ failed to do so, constituting legal error.[13] *See Brown-Hunter*, 806 F.3d at 494.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the ALJ's Decision and REMANDS this action to the ALJ for further proceedings consistent with this Order.[14] The Clerk of Court shall close the case file.

---

[13] Moreover, the ALJ's error is not harmless because it was consequential to the nondisability determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). The assessed RFC that Claimant was capable of sedentary work, *see* AR 22, did not reflect the consequences of Claimant standing and walking, much less kneeling without necessary breaks or days of recuperation. Even the vocational expert testified that an individual who would miss two days of work per month or would need an extra 60-minute break—which, based on Claimant's testimony and the medical record, is possible—would be unemployable. AR 69–70.

[14] The court declines to address Claimant's request for direct payment of benefits because it was not sufficiently raised in her Opening Brief. *See* ECF No. 21 at PageID.1830 (requesting the court to "remand with instructions to award benefits pursuant to sentence four of 42 U.S.C. § 405(g) (in turn providing: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.")). Consequently, Claimant's request is waived. *See Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2021 WL 3264271, at *11 (D. Idaho July 30, 2021) (citing *United States v. Zannino*, 895 F.3d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . ."); *cf. John Wyeth & Bro., Ltd., v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (Alito, J.) ("arguments raised in passing . . . , but not squarely argued, are considered waived." (cleaned up))).

IT IS SO ORDERED.

Dated:  Honolulu, Hawaii, May 22, 2026.



/s/ J. Michael Seabright

J. Michael Seabright
United States District Judge